1           UNITED STATES DISTRICT COURT
2       FOR THE EASTERN DISTRICT OF CALIFORNIA
3
4

5    ANTHONY BAEZ,
6                                        No.  2:06-cv-01667-RCT
7              Petitioner,
8
9        vs.
10
11   GARY SWARTHOUT[1], et al.,
12
13             Respondents.

14                                       **MEMORANDUM DECISION
                                         AND ORDER**

15

16          This matter comes before the court on Petitioner Anthony Baez's petition for writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.

18                              <u>INTRODUCTION</u>

19          Petitioner Baez is a state prisoner currently incarcerated at the California State Prison at

20   Solano, in Vacaville, California.  He filed this petition for a writ of habeas corpus to challenge a

21   2004 decision of the California Board of Prison Terms ("Board") denying him parole.  A review

22   of the record demonstrates that the 2005 decision of the Los Angeles County Superior Court

23   rejecting Baez's habeas claims was neither contrary to nor an unreasonable application of United

24   States Supreme Court precedent.  28 U.S.C. § 2254(d).  Accordingly, the petition is DENIED

----

[1]Gary Swarthout is substituted for his predecessor, D.K. Sisto, as the warden where the
petitioner is incarcerated, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

1

1    and the case is DISMISSED with prejudice.

2

3                      PROCEDURAL AND FACTUAL HISTORY

4          Baez is currently serving a sentence of fifteen years to life for second degree murder and

5    felony assault.  Baez's conviction was the result of a confrontation that took place on June 26,

6    1986, in the parking lot of a fast food restaurant in Pomona, California.  After one of three men

7    either whistled at or patted the buttocks of Baez's girlfriend, Baez approached them in their

8    pickup truck and exchanged words with passenger Nick Affatati.  Affatati got out of the truck

9    and pushed Baez, who then pushed Affatati, pulled out a gun, and told Affatati to "back off" and

10   that he was a "police officer."  Affatati got back in the truck, but his friend, Bruce Massey, exited

11   the truck and hurried after Baez, who had begun to walk away.  According to Baez, Massey

12   punched him, and Affatati, who had exited the truck and smashed the windshield of Baez's car,

13   also advanced toward Baez.  Baez drew his gun and fired two shots, fatally striking Massey in

14   the temple and in the leg.  (Pet. for Writ of Habeas Corpus Exhibit A (#6) at 3-6.)

15         Baez was convicted of second degree murder and felony assault on June 1, 1987, after a

16   jury trial.  (*Id.* at 3).  His conviction was affirmed by the California Court of Appeal on February

17   20, 1991.  (*Id.* at 1).  Baez began his sentence on September 15, 1987, with a minimum eligible

18   parole release date of December 17, 1997.  (Pet. for Writ of Habeas Corpus (#1) at 2.)  He was

19   denied parole at his initial parole hearing on January 29, 1997, his first subsequent parole

20   hearing on June 15, 2000, and his second subsequent parole hearing on February 17, 2004.  (*Id.*

21   at 2-3).

22         On November 1, 2004, Baez filed a petition for writ of habeas corpus in the Los Angeles

23   County Superior Court, alleging that the Board 's decision to deny him parole was invalid

24   because it was based on insufficient evidence and because his parole hearing was held eight

25   months late.  (Pet. for Writ of Habeas Corpus Exhibit Q (#6) at 1-3.)  On January 20, 2005, the

2

1   Superior Court denied the petition, finding that the Board's parole denial was supported by

2   "some evidence" as required by California law, and that Baez's claim as to the lateness of the

3   hearing was "disingenuous and without merit." (*Id.*)  The California Court of Appeal denied

4   Baez's petition on March 24, 2005, by citing to *In re Dannenberg*, 104 P.3d 783 (Cal. 2005), and

5   *In re Rosenkrantz*, 59 P.3d 174 (Cal. 2002).  (Pet. for Writ of Habeas Corpus Exhibit R (#6).)

6   The California Supreme Court denied Baez's petition on May 10, 2006, without comment or

7   citation to authority.  (Pet. for Writ of Habeas Corpus Exhibit S (#6).)

8          On July 31, 2006, Baez filed this federal petition for writ of habeas corpus.

9

10                                            CLAIMS

11         Baez's petition raises the following three claims with regard to the Board's 2004 denial of

12   his parole:[2]

13         1.     Baez's federal due process rights were violated when the Board held his parole

14                hearing eight months late;

15         2.     Baez's federal due process rights were violated because the Board's decision was

16                based on the minimum circumstances necessary in order to convict him of his

17                commitment offense; and

18         3.     Baez's federal due process rights were violated because the Board's decision was

19                not supported by "some evidence" that his release would pose an unreasonable

20                threat to public safety.[3]

_____

[2] Baez concedes that this habeas petition challenges the Board's 2004 decision only.  (Pet. for Writ of Habeas Corpus (#1) at 38.)

[3] To the extent that Baez's petition may be construed to raise a separate challenge to the overall fairness of California's "some evidence" standard, there is no indication that Baez presented this claim to the state courts on habeas review.  (*See* Pet. for Writ of Habeas Corpus (#1) at 33-37, Exhibit Q (#6) at 1-3.)  Therefore, the putative fourth claim is unexhausted, and

1    Respondents concede that Baez has exhausted his state judicial remedies for the three

2    claims listed above.

3

4                                    LEGAL STANDARD

5    In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

6    ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which established that a

7    federal habeas corpus petition shall not be granted with respect to any claim adjudicated on the

8    merits in the state courts unless the adjudication either:  (1) resulted in a decision that was

9    contrary to, or involved an unreasonable application of, clearly established federal law, as

10   determined by the United States Supreme Court; or (2) resulted in a decision that was based on

11   an unreasonable determination of the facts in light of the evidence presented to the state courts.

12   28 U.S.C. § 2254(d).  Under the "contrary to" clause, a federal court may grant the writ "if the

13   state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question

14   of law or if the state court decides a case differently than [the Supreme Court] has on a set of

15   materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).  Under the

16   "unreasonable application" clause, "a federal court may grant the writ if the state court identifies

17   the correct governing legal principle from [the Supreme Court]'s decisions but unreasonably

18   applies that principle to the facts of the prisoner's case."  *Id.* at 413.

19   Under AEDPA, federal courts review the "last reasoned decision" of the state courts.  *Ylst*

20   *v. Nunnemaker*, 501 U.S. 797, 804 (1991).  Because the California Supreme Court denied Baez's

21   petition for review without comment or citation to authority, and the California Court of Appeal

22   merely cited two California cases, the Court will here review the written decision of the Los

23   Angeles County Superior Court.

_____

we do not consider it here.  *See* 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275
(1971).

1                                    DISCUSSION

2       *1.  Parole Hearing Held Late*

3              Baez argues that the Board violated California Penal Code § 3041.5(b) when it held his

4       second subsequent parole hearing on February 17, 2004, despite the fact that at his previous

5       hearing on June 15, 2000, the Board had denied him parole "for a period of three years."  (Pet.

6       for Writ of Habeas Corpus (#2) at 18-19).   According to the California Penal Code, the Board

7       "shall schedule the next hearing" for either three, five, seven, ten, or fifteen years "after any

8       hearing at which parole is denied" depending on considerations of "the public and victim's

9       safety."  Cal. Pen. Code § 3041.5(b).

10             Claims that a state law or regulation has been violated or improperly applied are not

11      generally cognizable on federal habeas review.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)

12      ("[F]ederal habeas corpus relief does not lie for errors of state law. ") (internal citation omitted).

13      "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state

14      law questions."  *Id.*  at 68.  The purpose of federal habeas review, rather, is to determine whether

15      the federal constitution or laws have been violated.  *Id.*  Only egregious state law errors rise to

16      the level of federal constitutional due process violations.  *See id.* at 72.

17             Regardless of whether or not the purported eight-month delay in Baez's parole hearing

18      violated state law,[4] it does not rise to level of a federal constitutional violation.  Not every

19      prison-related regulation using mandatory language such as "shall" creates a liberty interest such

20      that, should the regulation not be followed, an inmate's federal due process rights are implicated.

───────────────

[4]The Superior Court found Baez's claim "disingenuous" because a hearing originally scheduled for September 16, 2003 was delayed at Baez's request.  (Pet. for Writ of Habeas Corpus Exhibit E (#6) at 22 ; Exhibit Q (#6) at 3).  Thus, even if we had authority to consider this state-law claim on federal habeas review, it would fail on the merits as "invited error."  *See United States v. Reyes-Alvarado*, 963 F.2d 1184, 1187 (9th Cir. 1992) ("The doctrine of invited error prevents a defendant from complaining of an error that was his own fault.").

1   *See Sandin v. Connor*, 515 U.S. 472, 483 (1995) ("[T]he search for a negative implication from

2   mandatory language in prisoner regulations has strayed from the real concerns undergirding the

3   liberty protected by the Due Process Clause.");  *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th

4   Cir. 2002) (noting that a deprivation of a constitutionally protected liberty interest must be

5   shown in order to establish a federal due process violation).  Rather, liberty interests "will

6   generally be limited to freedom from restraint which . . . imposes an atypical and significant

7   hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.  The

8   several-month delay in Baez's parole hearing "does not present a dramatic departure from the

9   basic conditions" of Baez's indeterminate sentence of fifteen years to life sufficient to trigger

10  federal due process guarantees. *Id.* at 485.

11         Since Baez's claim regarding the lateness of his parole hearing involves the interpretation

12  of state law and implicates no federal right, it is not cognizable on federal habeas review.  This

13  claim is therefore dismissed.

14  *2. Evidentiary Basis for Parole Denial*

15         Baez's two remaining habeas claims will be considered together because they are related.

16  One claim is that the Board's decision to deny him parole improperly relied on the minimum

17  circumstances necessary to convict him, rather than making a required finding that his

18  commitment was based on a crime committed in an especially egregious manner.  The other

19  claim is that the Board's decision was not based on "some evidence" that Baez's release would

20  pose an unreasonable risk to public safety as required by state law.  Both of these claims

21  essentially allege that the Board's parole denial decision violated Baez's federal due process

22  rights because it lacked sufficient evidentiary basis.

23         In general, to establish a federal due process violation, a party must show "two distinct

24  elements:  (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a

25  denial of adequate procedural protections." *McQuillion*, 306 F.3d at 900.  Baez alleges that he

6

1   was deprived of his liberty interest in parole release without an adequate evidentiary showing.

2   The Court examines this claim under two alternate theories:  (1) whether, even assuming Baez

3   had a liberty interest in parole release, he received constitutionally deficient process according to

4   clearly established Supreme Court precedent; and (2) whether, following *Hayward v. Marshall*,

5   603 F.3d 546 (9th Cir. 2010) (en banc), any liberty interest was improperly denied under

6   California law.  Because the answer to both questions is "no," we need not determine which

7   method is proper under Ninth Circuit precedent.

8                    *a.      Liberty Interest Assumed*

9            The Supreme Court has held that "despite the necessarily subjective and predictive nature

10  of the parole-release decision, state statutes may create liberty interests in parole release that are

11  entitled to protection under the Due Process Clause."[5]  *Bd. of Pardons v. Allen*, 482 U.S. 369,

12  371 (1987) (internal citation omitted); *see Greenholtz v. Inmates of Neb. Penal & Corr.*

13  *Complex*, 442 U.S. 1, 12 (1979) (holding that mandatory "shall" language in and structure of a

14  Nebraska statute created a liberty interest in parole release).  California Penal Code section 3041

15  states that the Board of Parole Hearings

16          shall set a release date unless it determines that the gravity of the current
17          convicted offense or offenses, or the timing and gravity of current or past
18          convicted offense or offenses, is such that consideration of the public safety

---

[5]  The Ninth Circuit's recent en banc decision in *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc), clarified that there is no federal constitutional right to "release on parole, or to release in the absence of some evidence of future dangerousness" arising directly from the Due Process Clause of the federal constitution; instead, any such right "has to arise from substantive state law creating a right to release." *Id.* at 555.  *Hayward* thus overruled *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003), *Sass v. California Board of Prison Terms*, 461 F.3d 1123 (9th Cir. 2006), and *Irons v. Carey*, 505 F.3d 846 (9th Cir.2007), to the extent they "might be read to imply that there is a federal constitutional right regardless of whether state law entitles the prisoner to release." *Id.*

7

1  requires a more lengthy period of incarceration for this individual, and that a
2  parole date, therefore, cannot be fixed at this meeting.
3

4  Cal. Penal Code § 3041(b).  In addition, "a life prisoner shall be found unsuitable for and denied

5  parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to

6  society if released from prison."  Cal. Code Regs. tit. 15, § 2402(a).  For the purpose of this case,

7  we assume that the mandatory "shall" language in the California Penal Code creates a liberty

8  interest protected by the federal Due Process Clause.

9  Next we consider whether Baez received constitutionally deficient process when he was

10  deprived of his liberty interest in parole release.  Under clearly established United States

11  Supreme Court precedent, when a state statute creates a liberty interest in parole release, the state

12  must provide an inmate with an opportunity to be heard and an explanation of why parole is

13  being denied.  *Greenholtz*, 442 U.S. at 16.  "The Constitution does not require more."  *Id.*

14  Because the Superior Court did not make explicit findings as to whether Baez received this

15  process, we "perform an independent review of the record to ascertain whether the state court

16  decision was objectively unreasonable" under AEDPA.  *Pham v. Terhune*, 400 F.3d 740, 742

17  (9th Cir. 2005) (internal citation omitted).

18  The record in this case indicates that Baez received an in-person hearing in front of the

19  Board on February 17, 2004, at which he was represented by counsel and offered an opportunity

20  to present documents, answer questions, and speak on his own behalf.  (Pet. for Writ of Habeas

21  Corpus Exhibit E (#6)).  At the conclusion of the hearing, the Board rendered its decision and

22  explained to Baez why parole was being denied.  (*Id.*)  Thus, Baez was afforded all the process

23  that was due to him according to the leading Supreme Court precedent.  *See Greenholtz*, 442

24  U.S. at 14–16.  Therefore, the Los Angeles County Superior Court's decision denying Baez's

25  habeas claim was not contrary to clearly established federal law, and his federal habeas claim

26  must be denied.  *See* 28 U.S.C. § 2254(d).

8

| | |
|---|---|
| 1 | b.     *Analysis Under the Ninth Circuit's* <u>Hayward v. Marshall</u> *Decision* |

2     In *Hayward v. Marshall*, a habeas case involving a California inmate's federal due

3  process challenge to the evidentiary basis of his parole denial, the Ninth Circuit instructed that

4  "courts in this circuit facing the same issue in the future[] need only decide whether the

5  California judicial decision approving . . . [the denial of] parole was an unreasonable application

6  of the California 'some evidence' requirement, or was based on an unreasonable determination of

7  the facts in light of the evidence." 603 F.3d at 562–63 (internal citation omitted).  In other

8  words, if Baez is not entitled to parole under California law, he cannot have been deprived of

9  any state-created liberty interest, and no federal due process claim can go forward.

10     Under California law, "the paramount consideration . . . under the governing [parole]

11  statutes is whether the inmate currently poses a threat to public safety."  *Id.* at 562 (quoting *In re*

12  *Lawrence*, 190 P.3d 535, 552 (Cal. 2008)).  State courts therefore "review . . . the record for

13  'some evidence' that an inmate poses a current threat to public safety."  *Id.* at 551 (citing *In re*

14  *Shaputis*, 190 P.3d 573, 580 (Cal. 2008)).[6]

15     In Baez's case, the Superior Court concluded that "the record contains 'some evidence' to

16  support the Board's finding that [Baez] is unsuitable for parole."  (Pet. for Writ of Habeas Corpus

17  Exhibit Q (#6) at 1.)  First, the Superior Court found that the record contained evidence that the

18  commitment offense was especially cruel "because the motive was inexplicable or very trivial in

19  relation to the offense."  (*Id.* at 2).  While, under California law, the aggravated nature of the

---

[6] This Court notes that, under California law, Baez's claim that his parole denial was
improperly based on the minimum circumstances necessary to sustain his underlying conviction
is necessarily subsumed within his claim that his parole denial was not supported by "some
evidence" that his release would pose an unreasonable threat to public safety.  This is because
the California Supreme Court has held that "the aggravated nature of the [commitment offense]
does not in and of itself provide some evidence of *current* dangerousness to the public" absent
something else in the record that supports an inference of dangerousness.  *See Lawrence*, 190
P.3d at 555.

1    commitment offense does not "in and of itself" provide sufficient evidence to support a parole

2    denial, *Lawrence*, 190 P.3d at 555, "the offense of conviction may be considered" in determining

3    whether the inmate's release may present a threat to public safety, *Hayward*, 603 F.3d at 562.

4    Furthermore, the Superior Court found that there was also evidence in the record that Baez was

5    not suitable for release based on his prison psychological evaluation.  (Pet. for Writ of Habeas

6    Corpus Exhibit Q (#6) at 3.)   That evaluation, conducted in October 2003, concluded that, while

7    Baez "would appear to pose less of a threat than when first incarcerated," he had a "fascination

8    with guns" which was "impossible to evaluate, because he cannot be observed with access to

9    guns in prison," and he posed a "moderate" risk of violence.  (Pet. for Writ of Habeas Corpus

10   Exhibit K (#6) at 4.)

11          Because the Superior Court pointed to evidence in the record tending to show that Baez's

12   release could present a threat to public safety, we cannot say that its application of California's

13   "some evidence" requirement was objectively unreasonable.  *See Hayward*, 603 F.3d at 562–63.

14   Nor was its decision based on an unreasonable determination of the facts in light of the evidence

15   in the record.  *See id.*  It was not unreasonable for the Superior Court to credit the conclusions of

16   a recent psychological report, which was prepared by a licensed psychologist, as an accurate

17   assessment of Baez's current dangerousness.   Nor was it unreasonable for the Superior Court to

18   conclude that Baez's motive for the killing was inexplicable or trivial, given undisputed evidence

19   in the record that Baez shot an unarmed man in an altercation that began when someone whistled

20   at or briefly touched his girlfriend.  (*See* Pet. for Writ of Habeas Corpus Exhibit A (#6) at 3-6.)

21          Under the Ninth Circuit's holding in *Hayward v. Marshall*, because the California

22   Superior Court made a reasonable determination that Baez was not entitled to parole under

23   California law, he was not deprived of a state-created liberty interest.  His federal due process

24   claim must, therefore, fail, and his federal habeas petition is denied.

25

1    Therefore, it is hereby

2    **ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. §

3    2254 is **DENIED** and the case is **DISMISSED** with prejudice.

4    The Clerk is directed to send uncertified copies of this Order to all counsel of record and

5    to any party appearing *pro se* at said party's last known address.

6    DATED this 7th day of October, 2010, at Seattle, Washington.

7

8

9

10

11

RICHARD C. TALLMAN
United States Circuit Judge
Sitting by designation